1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT FOR THE
6                  EASTERN DISTRICT OF CALIFORNIA
7
8    SUSAN RUBADEAU,                    )    1:13-CV-339  AWI JLT
                                        )
9                    Plaintiff,         )
                                        )
10        v.                            )    ORDER ON DEFENDANTS'
                                        )    MOTION TO DISMISS
11   M.A. MORTENSON COMPANY, and        )
     LOGAN BROWN,                       )
12                                      )    (Doc. No. 16)
                     Defendants.        )
13   _____)
14

15        This is an employment discrimination case brought by Plaintiff Susan Rubadeau

16   ("Rubadeau") against her former employer Defendant M.A. Mortenson Co. ("MAMCO") and her

17   former supervisor Defendant Logan Brown ("Brown").  Defendants removed this case from the

18   Kern County Superior Court on the basis of diversity jurisdiction.  The active complaint is the

19   First Amended Complaint ("FAC").  The FAC contains 15 causes of action, each of which is

20   based on either violations of California Government Code § 12900 et seq. (the Fair Employment

21   and Housing Act ("FEHA")) or violations of public policy.  The causes of action complain of

22   discrimination, harassment, retaliation, and termination.  Defendants move to dismiss each of the

23   FAC's causes of action.  For the reasons that follow, the motion will be granted.

24

25                              **BACKGROUND**

26        From the FAC, Rubadeau began working for MAMCO on January 3, 2012, as an

27   assistant superintendent.  At all relevant times, Rubadeau alleges that she was a loyal employee

28   whose performance was outstanding.  However, ever since the beginning of her employment,

Rubadeau was subject to gender discrimination.  Specifically, Rubadeau was excluded from men-only meetings, excluded from leadership team pictures, excluded from team building-exercises, and was generally ostracized.  Rubadeau was subject to sexist remarks about females, remarks about the ability of a woman to do a man's job, and inappropriate sexual comments about her body, clothing, and hair.  Rubadeau was touched in an inappropriate and sexual manner, and the touching was unwanted.  Rubadeau suffered discriminatory treatment from management because of her gender.  Rubadeau suffered false criticisms of poor performance, and had job duties, responsibilities, and benefits taken away from her.  Male coworkers were not subject to any of this conduct.

Around March 2012, Rubadeau complained about this treatment to her immediate supervisor and to upper level management.  Despite the complaints, the harassing and discriminatory conduct increased in severity.

In April 2012, Rubadeau was severely injured in an accident while on the job.  Rubadeau suffered a broken knee cap and the tearing of various knee ligaments.  Because of this injury, Rubadeau had difficulty walking and performing "major life activities."  MAMCO was aware of this disability.  Because of her knee disability, Rubadeau was further excluded and ostracized, and job benefits, responsibilities, and duties were taken away.  Rubadeau informed management of her intent to file a worker's compensation claim.  Management tried to dissuade Rubadeau from reporting her injury and from filing a worker's compensation claim because management received a bonus for an injury-free environment.

Rubadeau requested finite medical leave in order to treat her disability.  Rather than provide Rubadeau with finite medical leave, MAMCO denied the request without further discussion and without engaging in an interactive process.

Rubadeau complained to her supervisor regarding the lack of reasonable accommodation and disability discrimination.  Several days later, on April 11, 2012, Rubadeau was terminated by a MAMCO vice president.  Rubadeau alleges that the termination was because of her gender and her disability, and was also in retaliation for requesting a reasonable accommodation and complaining about gender discrimination and harassment.

## LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121. However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761.  The Ninth Circuit has distilled the following principles from Iqbal and Twombly:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.  Dichter-Mad, 709 F.3d at 761.  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).  However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities.  See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

### DEFENDANT'S MOTION

**1.**     **Discrimination Claims – 1st, 2nd, 7th, & 8th causes of action**[1]

*Defendant's Argument*

MAMCO argues that, although Rubadeau alleges that she is a woman, that she suffered from a knee injury, and that she was performing her work competently, the remainder of her allegations render her claims unintelligible.  There are no material facts alleged that demonstrate or describe gender or disability discrimination, and there are no allegations that demonstrate that gender or disability was a motivating factor.  Further, the FAC's allegations that MAMCO terminated, refused to employ, refused to promote, and failed to reinstate Rubadeau are without any factual support.

*Plaintiff's Opposition*

Rubadeau argues that her claims of discrimination have four ultimate facts.  Each of the necessary ultimate facts are pled in the FAC.  The FAC identifies Rubadeau as being in two protected class, alleges that Rubadeau was performing her job satisfactorily, alleges that she

---

[1] The first and seventh causes of action allege FEHA discrimination based on gender and physical disability. The second and eighth causes of action allege discrimination in violation of public policy based on gender and physical disability.  The parties make no distinction between the FEHA claims and the public policy claims. Accordingly, the Court will analyze the FEHA and public policy claims under the same rubric.

suffered several adverse employment actions, and includes other indicia of discrimination such as false reasons given by MAMCO for its actions and unequal treatment.

*Legal Standard*

It is unlawful under FEHA for an employer "to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment" because of *inter alia* a person's gender or physical disability.  Cal. Gov. Code § 12940(a).  To state a prima facie case of discrimination under FEHA, a plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the position she sought or was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance that suggests a discriminatory motive by the employer.  See Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013); Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 355 (2000).  An "adverse employment action" must be both substantial and detrimental, and conduct that is minor or relatively trivial or simply displease an employee is insufficient.  Horsford v. Board of Trustees of Cal. State Univ., 132 Cal.App.4th 359 (2005).  Adverse employment actions can include termination, demotion, failing to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits.  See Roby v. McKesson Corp., 47 Cal.4th 686, 706 (2009); Guz, 24 Cal.4th at 355; Thomas v. Department of Corr., 77 Cal. App. 4th 507, 511 (2000).

*Discussion*

MAMCO does not dispute that the FAC alleges that Rubadeau is protected due to gender and physical disability, nor does MAMCO dispute that the FAC adequately alleges Rubadeau was competently performing her work.  See FAC ¶¶ 15, 20-22, 33, 35, 115, 117.  Instead, MAMCO focuses on the adequacy of the third and fourth elements of a prima facie case.  The Court will address the third and fourth elements separately.

a.    Adverse Employment Action

The FAC alleges six adverse employment actions:  termination, failure to reinstate, failure to promote, failure to employ, removal of job benefits, and removal of job duties and

5

1    responsibilities.  See id. at ¶¶ 36, 49, 120, 135.  Termination is an adverse employment action.

2    See Guz, 24 Cal.4th at 355.  The FAC alleges that MAMCO terminated Rubadeau's employment

3    in April 2012 because of her gender and her disability.  See FAC ¶¶ 14, 19, 27.  The FAC

4    therefore adequately alleges at least one adverse employment action.  However, the Court has

5    concerns about the other alleged adverse employment actions.

6           First, with respect to a failure to employ, there are no allegations that describe how or

7    when MAMCO failed to employ Rubadeau.  Such allegations are necessary in this case because

8    the FAC expressly alleges and relies on the fact that Rubadeau was employed by MAMCO from

9    January 2012 to April 2012.  See FAC ¶ 14.  MAMCO could not simultaneously employ and not

10   employ Rubadeau.  Rubadeau's opposition does not defend the failure to employ allegation.

11   Given the clear contradiction and the failure to defend the allegation, the FAC's failure to employ

12   discrimination theory is implausible.

13          Second, a failure to promote can be an adverse employment action.  See Roby, 47 Cal.4th

14   at 706.  However, there is only an unadorned allegation that MAMCO failed to promote

15   Rubadeau.  No allegations describe when MAMCO failed to promote Rubadeau, to what position

16   she was denied promotion, or that she was even eligible for promotion.  While perhaps eligibility

17   for promotion need not be alleged in every case, such an allegation is necessary in this one.  The

18   FAC demonstrates that Rubadeau was employed by MAMCO for approximately 100 days

19   (January 3, 2012, to April 11, 2012).  This is a relatively short period of time, and it is not clear

20   that a promotion in less than 100 days on the job would be possible.  To plausibly allege a failure

21   to promote under the circumstances of this case, Rubadeau must identify the position to which

22   she was denied a promotion and allege that she was eligible for that promotion.

23          Third, a failure to reinstate or rehire a former employee can constitute an adverse

24   employment action under certain circumstances.  See Josephs v. Pacific Bell, 443 F.3d 1050,

25   1060 (9th Cir. 2006).  If the employee can point to "new elements of unfairness" associated with

26   the refusal to reinstate, and those new elements did not exist at the time of termination, then the

27   employee may bring a discrimination claim based on the employer's failure to reinstate.  Id.; see

28   also Thompson v. Permanente Med. Group, 2012 U.S. Dist. LEXIS 142442, *6-*12 (N.D. Cal.

Oct. 3, 2012).  However, if the request for reinstatement is simply an attempt to revisit the

employer's termination decision, then the refusal to reinstate is not a new discriminatory act and

is not actionable.  See Collins v. United Airlines, Inc., 514 F.2d 594, 596 (9th Cir. 1975);

Brundage v. Hahn, 57 Cal.App.4th 228, 238 (1997).  Here, the basis for this theory appears to be

the same basis as the termination.  There is nothing that separates reinstatement from

termination.  In fact, the FAC makes no allegations regarding any reinstatement efforts by

Rubadeau or any responses by MAMCO to requests for reinstatements.  There is only an

unadorned allegation that MAMCO failed to reinstate Rubadeau.  Because the FAC's allegations

reflect only an attempt to revisit the termination decision without any "new unfairness" attached

to reinstatement, reinstatement is not a plausible theory.  See Josephs, 443 F.3d at 1060;

Brundage, 57 Cal.App.4th at 238; Thompson, 2012 U.S. Dist. LEXIS 142442 at *6-*12.

        Fourth, the FAC alleges that job benefits, duties, and responsibilities were taken away

from Rubadeau because of her gender and because of her disability.  See FAC ¶¶ 16, 17, 22.  For

reductions of job benefits, duties, and responsibilities to be an adverse employment action, those

reductions must be "significant."  See Roby, 47 Cal.4th at 706 ; Thomas, 77 Cal.App.4th at 511.

The FAC contains no allegations that describe what benefits or responsibilities were taken away,

or an explanation of why the removed benefits and responsibilities were significant.  Without

such allegations, no adverse employment action is alleged.  The FAC does not show that a

reduction in benefits and responsibilities is a plausible theory.

        In sum, the FAC has adequately alleged one adverse employment action – termination.

Additional allegations are necessary in order for Rubadeau to plausibly allege other adverse

employment actions.  Because it is not clear that amendment would be futile, dismissal of the

non-termination discrimination theories will be with leave to amend.

        b.      Indicia of Discriminatory Motive

        One indicia of discrimination is that other employees who are not in a plaintiff's

protected class were treated more favorably by the employer.  See Schechner v. KPIX-TV &

CBS Broad., Inc. 686 F.3d 1018, 1023 (9th Cir. 2012).  The FAC alleges that Rubadeau's male

co-workers were not subject to the reduction of job benefits, duties and responsibilities.  See

FAC ¶ 18.  This allegation is sufficient to allege that male coworkers received more favorable treatment from MAMCO, at least with respect to job benefits, duties, and responsibilities. However, as discussed above, the FAC does not plausibly allege that the reduction in benefits, duties, and responsibilities were adverse employment actions.

The FAC also alleges that MAMCO: (1) assigned employees who were not in Rubadeau's protected class to the duties that Rubadeau had; (2) the assigned employees were not as qualified as Rubadeau; (3) MAMCO made discriminatory statements based on Rubadeau's protected status; (4) MAMCO gave false, vague, and illegal reasons for its adverse actions; (5) MAMCO did not follow its own internal rules and procedures in taking adverse actions against Rubadeau; (6) MAMCO gave lesser or no discipline to employees who were not in Rubadeau's protected class but who engaged in the same or worse conduct as Rubadeau; (7) MAMCO has a pattern or practice of discriminating against employees with Rubadeau's protected status; and (8) MAMCO has implemented policies and procedures that have an adverse impact on those in Rubadeau's protected class.  See FAC ¶¶ 38, 51, 122, 137.

These allegations are insufficient for numerous reasons.  First, the allegations of assigning lesser qualified individuals who are not in Rubadeau's protected classes do not identify what those job duties were or why the employees were not as qualified.  Second, although discriminatory remarks by the relevant decision makers are an indicia of discrimination, see Reid v. Google, Inc., 50 Cal.4th 512, 545 (2010), the FAC does not identify who (including job titles) made discriminatory remarks or what specific remarks were made.[2]  Third, there are absolutely no allegations that describe what reasons MAMCO gave for any of its actions, nor are there allegations that explain why any those reasons were false.  Fourth, the FAC does not identify which internal rules were not followed with respect to any of MAMCO's decisions or actions. Fifth, there are no allegations that MAMCO disciplined Rubadeau in any way, and there are no allegations that describe what kind of conduct by other employees went unpunished.  Sixth, the FAC's factual allegations are generally limited to MAMCO's conduct towards Rubadeau.  There

---

[2] The FAC does allege that comments of a sexual nature were made to Rubadeau, and that she heard comments about a woman doing a man's job as well as general sexist comments, but there are no specifics given and the speakers are not identified.  See FAC ¶¶ 16, 17.

1  is nothing that plausibly indicates that MAMCO has a pattern and practice of discriminating

2  against women or physically disabled employees.  Finally, the FAC fails to identify any

3  MAMCO policy that creates a disparate impact against women or physically disabled employees,

4  nor are there any allegations that a disparate impact actually exists.[3]

5      Paragraphs 38, 51, 122, 137 are all identical.  With the exception of Paragraph 18, the

6  FAC's indicia of discrimination allegations are too conclusory and unsupported to plausibly

7  support an inference of discrimination.  Thus, dismissal is appropriate.  If Rubadeau has a factual

8  basis for these assertions, then she may include those bases in an amended complaint.[4]

9  **2.      Sex Harassment Claims – 3rd & 4th causes of action**[5]

10     *Defendant's Argument*

11     MAMCO argues that these causes of action are supported only by a series of inadequate

12  legal conclusions.  There are no descriptions given of the harassing comments or the harassing

13  touches, nor are there any allegations that reasonably demonstrate that the conduct was pervasive.

14     *Plaintiff's Opposition*

15     Rubadeau argues that there are three ultimate facts for her claims of harassment.  Each of

16  the necessary ultimate facts are pled in the FAC.  The FAC alleges that Rubadeau was subjected

17  to unwelcome verbal and physical conduct because of her gender, the conduct was severe and

18  pervasive, and the conduct created an abusive and hostile working environment.

---

[3] Disparate impact and disparate treatment are two separate theories for proving discrimination.  See International Bro. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).  Disparate impact involves a challenge to a facially neutral practice/policy and does not consider the employer's motivation.  See id.  Disparate treatment involves an employer's intentional decision to treat some employee's differently because of the employees' protected class.  See id.  Because these theories are materially different, if Rubadeau actually intends to pursue a disparate impact theory, she will be required to plead disparate impact as a separate cause of action.

[4] Rule 11(b) of the Federal Rules of Civil Procedure establishes the criteria for including an allegation in a complaint.  Failure to abide by Rule 11 does not further the litigation process, and often leads to the unnecessary expenditure of scarce judicial resources and an increase in the costs of litigation.  There are issues raised in Paragraphs 38, 51, 122, 137 that have no other basis in the complaint.  If Rubadeau has a factual basis to make these allegations, then she will be required to do so in an amended complaint.  If Rubadeau does not have an adequate factual basis, but is instead merely listing a compendium of methods for demonstrating discrimination (as argued by MAMCO), then Rubadeau shall not include such allegations in an amended complaint.  The Court expects compliance with Rule 11 for the entirety of any pleading.

[5] The third cause of action is a FEHA sex harassment claim against MAMCO, and the fourth cause of action is a sex harassment claim against Brown.

*Legal Standard*

FEHA prohibits harassment of an employee.  Cal. Gov't Code § 12940(j)(1).  Under FEHA, an employer is vicariously and strictly liable for the harassing conduct of its supervisors, and employees are individually liable for their own harassing behavior.  Cal. Gov. Code §§ 12940(j)(1), (j)(3); McClung v. Employment Development Dept., 34 Cal.4th 467, 471 (2004); State Dept. of Health Services v. Superior Ct., 31 Cal.4th 1026, 1042 (2003); Fiol v. Doellstedt, 50 Cal.App.4th 1318, 1327 (1996).  To establish a claim for FEHA harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe or pervasive that it created a hostile work environment.  See Lawler, 704 F.3d at 1244; Hughes v. Pair, 46 Cal.4th 1035, 1043 (2009).  Unless harassing conduct is "severe in the extreme," there is "no recovery for harassment that is occasional, isolated, sporadic, or trivial."  Hughes v. Pair, 46 Cal.4th 1035, 1043 (2009).  Otherwise, there must be a "concerted pattern of harassment of a repeated, routine or a generalized nature."  Aguilar v. Avis Rent A Car Sys., Inc., 21 Cal.4th 121, 130-31 (1999).  Further, "to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive."  Hughes, 46 Cal.4th at 1044.  Whether a "hostile work environment" exists can be determined by examining the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Miller v. Department of Corrections, 36 Cal.4th 446, 462 (2005).  Unlike discrimination claims,  harassment claims "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management," and do not include "actions such as hiring and firing, job or project assignments, . . . promotion or demotion, and performance evaluations . . . ."  Lawler, 704 F.3d at 1244; Reno v. Baird, 18 Cal.4th 640, 646-47 (1998).  "[H]arassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."  Roby v. McKesson Corp., 47 Cal.4th 686, 706 (2009).  That is, "discrimination refers to bias in the

1    exercise of official actions on behalf of the employer, and harassment refers to bias that is

2    expressed or communicated through interpersonal relations in the workplace." Id. at 707.  In

3    some cases, "a hostile message that constitutes harassment is conveyed through official

4    employment actions, and therefore evidence that would otherwise be associated with a

5    discrimination claim can form the basis of a harassment claim." Id. at 708.

6        *Discussion*

7        The FAC alleges that Rubadeau is protected because of her gender as a woman, that she

8    was subject to harassment because of her gender, that Brown engaged in harassing behavior, and

9    that the harassing behavior was unwelcome and subjectively offensive.  However, the FAC does

10   not plausibly allege an objectively hostile work environment based on gender.

11       Some of the conduct identified in the FAC is generally not considered to be harassing

12   conduct.  For example, the FAC alleges that Rubadeau was subject to false criticisms and

13   accusations of poor performance, was excluded from meetings, and had benefits, duties, and

14   responsibilities taken away from her.[6] See FAC ¶¶ 61, 75.  These acts are properly classified as

15   personnel management decisions and do not themselves constitute harassment.  See Lawler, 704

16   F.3d at 1244; Reno, 18 Cal.4th at 646-47 (listing a number of personnel management decisions,

17   including deciding who will attend meetings, that are not the basis for a harassment suit).  It is

18   true that *Roby* recognizes that some official employment actions can be used to convey a hostile

19   message.  However, the FAC neither explains how these acts conveyed a hostile message nor

20   alleges that a particular hostile message was intended to be conveyed.  Additionally, the FAC

21   alleges that Rubadeau suffered from "general ostracism."  See FAC ¶ 16.  However, employers

22   cannot force employees to socialize with one another.  Brooks v. City of San Mateo, 229 F.3d

23   917, 929 (9th Cir. 2000).  Mere ostracism does not amount to a hostile work environment.  Cozzi

24   v. County of Marin, 787 F.Supp.2d 1047, 1072 (N.D. Cal. 2011); Fisher v. San Pedro Peninsula

25   Hosp., 214 Cal.App.3d 590, 615 (1989); see also Strother v. Southern Cal. Permanente Med.

26   Grp., 79 F.3d 859, 869 (9th Cir. 1996).  The allegation of "general ostracism" is an inadequate

27

28       [6]There is also an allegation that Rubadeau was excluded from team building exercises.  The nature of these exercises is unknown, and it is possible for the exercises to be considered either social or management related.

1    basis for a hostile work environment claim.  See Fisher, 214 Cal.App.3d at 615.

2           The FAC does allege other conduct that is typically associated with hostile work

3    environment harassment.  The FAC identifies conduct such as the touching of Rubadeau in an

4    inappropriate sexual manner, inappropriate sexual remarks regarding Rubadeau's appearance,

5    comments about a woman doing a man's job, and general sexist comments against women.  See

6    FAC ¶¶ 16, 17, 61, 75.  However, the allegations are insufficient to plausibly show severity,

7    pervasiveness, or objective offensiveness.  See Hughes, 46 Cal.4th 1043-44; Miller, 36 Cal.4th at

8    462.  There are no allegations that identify the touching involved, or how often the touching

9    occurred.  There are no descriptions of what the sexist remarks about women were, how often

10   they were made, or who made them.  Although daily comments about Rubadeau's appearance

11   were made, there are no descriptions of what the comments actually were or who said them.

12   Factual allegations that describe and identify the comments and touching involved, the frequency

13   of the comments and touching, and who did or said them are necessary to state a plausible claim.[7]

14          Rubadeau is not required to marshal all of her evidence or go into minute detail.

15   However, Rubadeau is required to allege facts that plausibly indicate an objectively hostile work

16   environment, based on either pervasiveness and/or severity.  Simply alleging that general conduct

17   was severe, without an indication of frequency or a description of the conduct, is too conclusory.

18   Because the FAC relies largely on conclusory allegations, dismissal of these causes of action

19   with leave to amend is appropriate.

20   **3.      Retaliation Claims – 5, 6, 9, & 10 causes of action**[8]

21          *Defendant's Argument*

22          MAMCO argues that Rubadeau has merely stated a litany of possible ways to engage in

23   protected activity, but there are no factual allegations that reasonably support a conclusion that

24   she actually engaged in protected activity.  Similarly, Rubadeau alleges a laundry list of

---

25

26   [7]The identify of the harasser, i.e. whether the harasser was a supervisor, is important for two reasons.  First,
     MAMCO is strictly liable for harassment by supervisors.  See  Fiol, 50 Cal.App.4th at 1327, 1331.  Second, Brown

27   is liable for his own conduct, but the allegations do not adequately describe what Brown actually said or did.  See id.

28   [8]The fifth and ninth causes of action allege FEHA retaliation for complaining about gender discrimination
     and for requesting disability accommodation.  The sixth and tenth causes of action allege retaliation in violation of
     public policy for complaining about gender discrimination and for requesting disability accommodation.

1  retaliatory acts by MAMCO, but she provides no specifics or details.  Rubadeau's allegations

2  amount to nothing more than contradictory and conclusory allegations that do not put MAMCO

3  on notice of the basis of the claim.

4       *Plaintiff's Opposition*

5       Rubadeau argues that there are three ultimate facts for her claims of retaliation.  Each of

6  the necessary ultimate facts are pled in the FAC.  The FAC alleges that Rubadeau engaged in

7  various protected activities, she suffered adverse employment actions by MAMCO, and there is a

8  causal link between the protected activities and the adverse actions.

9       *Legal Standard*

10      FEHA protects employees against retaliation for filing a complaint or participating in

11 proceedings or hearings under the act, or for opposing conduct made unlawful by the act.  See

12 Cal. Gov. Code, § 12940(h); Miller, 36 Cal.4th at 472.  "Employees may establish a prima facie

13 case of unlawful retaliation by showing that:  (1) they engaged in activities protected by FEHA,

14 (2) their employers subsequently took an adverse employment action against them; and (3) there

15 was a causal connection between the protected activity and the adverse employment action."

16 Miller, 36 Cal.4th at 472.  An "adverse employment action" under FEHA is an employment

17 action "that materially affects the terms, conditions, or privileges of employment, rather than

18 simply . . . an adverse action or treatment that reasonably would deter an employee from

19 engaging in protected activity."  Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1051 (2005).

20 "A materially adverse change might be indicated by a termination of employment, a demotion

21 evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

22 significantly diminished material responsibilities, or other indices that might be unique to a

23 particular situation."  Thomas, 77 Cal.App.4th at 511.  However, "there is no requirement that an

24 employer's retaliatory acts constitute one swift blow rather than a series of subtle, yet damaging

25 injuries . . . ."  Yanowitz, 36 Cal.4th at 1055-56; Patten v. Grant Joint Union High Sch. Dist., 134

26 Cal.App.4th 1378, 1390 (2005).

27      *Discussion*

28      The parties agree about the basic elements needed to allege a retaliation claim.  Rubadeau

13

1   is correct that the FAC includes allegations that address the three elements of retaliation.

2   However, the allegations are insufficient to allege a plausible claim.

3          As to the first element, the FAC adequately alleges some protected activities.  The FAC

4   alleges that Rubadeau complained about gender discrimination and harassment to her immediate

5   supervisor and to upper level management in March 2012.  See FAC ¶ 19.  The FAC also alleges

6   that Rubadeau complained to her supervisor about the lack of reasonable accommodation and

7   about disability discrimination.  See id. at ¶ 27.  Complaining about discrimination and

8   harassment is protected activity under FEHA.  See Yanowitz, 36 Cal.4th at 1043; Miller, 36

9   Cal.4th at 473-74.  Complaining about the failure to accommodate is a form of opposition to an

10  employment practice, and would appear to be protected activity.  Although the Court has held

11  that additional facts are needed in order to state plausible claims for FEHA discrimination and

12  harassment, the conduct alleged in the FAC could support a reasonable belief that improper

13  discrimination and harassment was occurring.  As long as the employee has a reasonable belief

14  that the conduct is discriminatory or harassing, the employee's complaints are protected,

15  irrespective of whether discrimination or harassment was actually occurring.  See Yanowitz, 36

16  Cal.4th at 1043; Miller, 36 Cal.4th at 473-74.  Therefore, Paragraphs 19 and 27 sufficiently

17  allege the protected activity of complaining about discrimination, harassment, and the failure to

18  accommodate.

19         The other protected activities identified in the FAC are insufficient.  The Court agrees

20  with MAMCO that the FAC includes a laundry list of conduct that is conclusory and without

21  factual support.  See FAC ¶¶ 88, 101, 146, 158.  The FAC alleges that Rubadeau participated in

22  investigations of gender discrimination and harassment, however, there are no allegations that

23  describe any investigations or that describe Rubadeau's participation.  The FAC alleges that

24  Rubadeau testified and assisted in proceedings against MAMCO for gender discrimination and

25  harassment, however, there are no allegations that describe the circumstances of the testimony,

26  including when the testimony occurred or to whom the testimony was given.  The FAC also

27  alleges that Rubadeau filed a complaint regarding discrimination and harassment, as well as

28  protested and opposed discrimination and harassment.  It is possible that these are all referring to

1   Rubadeau's complaints to her supervisor and upper managers, as described in Paragraphs 19 and

2   27.  However, it is equally possible that Rubadeau is attempting to refer to separate instances that

3   are in addition to Paragraphs 19 and 27.  Because "complaining" about discrimination and

4   harassment is alleged separately from opposing, protesting, and filing a complaint, the Court will

5   dismiss the allegations as either redundant of the "complaining" allegation or too conclusory and

6   without factual support.  Finally, the FAC alleges as protected conduct that Rubadeau requested

7   accommodation and requested to engage in the interactive process.  However, requesting that

8   MAMCO do these things in the first instance does not constitute a form of opposition or

9   participation in a proceeding, and thus is not protected activity under FEHA's retaliation

10  provision.[9]  See Kelley v. Corr. Corp. of Am., 750 F.Supp.2d 1132, 1143-44 (E.D. Cal. 2010).

11       As to the adverse employment actions, the FAC alleges that Rubadeau was terminated

12  because she complained about discrimination, harassment, and the failure to accommodate.  See

13  FAC ¶¶ 19, 27.  Termination is an adverse employment action.  See Thomas, 77 Cal.App.4th at

14  511.  Thus, there is one adverse employment action that has been adequately identified.

15       The remainder of the adverse employment actions suffer from the same problems as the

16  adverse employment allegations under the 1st, 2nd, 7th, and 8th causes action.  In fact, the same

17  paragraphs that discuss adverse employment actions under those causes of action are identically

18  realleged under the 5th , 6th, 9th , and 10th causes of action.  Cf. FAC ¶¶ 36, 49, 120, 135 with

19  FAC ¶¶ 90, 103, 148, 160.  Those adverse employment actions are MAMCO's failure to employ,

20  failure to promote, and failure to reinstate Rubadeau.  See id.  For the same reasons discussed

21  under the 1st, 2nd, 7th, and 8th causes action, these allegations fail.

22       Finally, as to a causal link between the adverse employment action and the protected

23  activity, the FAC does not plausibly show such a link.  Rubadeau has included under these causes

24  of action the same paragraph that was alleged under the 1st, 2nd, 7th, and 8th causes action

25  regarding indicia of discrimination.  Cf. FAC ¶¶ 38, 51, 122, 137 with  FAC ¶¶ 92, 105, 150,

26

27       [9]Asking the employer for reasonable accommodation and to engage in the interactive process is distinct
    from making complaints to the employer about failing to provide reasonable accommodation and failing to engage in
28  the interactive process.  Further, FEHA provides for separate causes of action when an employer fails to make
    reasonable accommodation and fails to engage in the interactive process.  See Cal. Gov. Code §§ 12940(m), (n).

1    162.  For the same reasons discussed above, these allegations fail.

2           Additionally, a "causal link may be established by an inference derived from

3    circumstantial evidence, such as the employer's knowledge that the employee engaged in

4    protected activities and the proximity in time between the protected action and allegedly

5    retaliatory employment decision." Morgan v. Regents of University of Cal., 88 Cal.App.4th 52,

6    70 (2001); Fisher, 214 Cal.App.3d at 615.  The FAC alleges that Rubadeau complained in March

7    2012 to her immediate supervisor and to upper management about gender discrimination and

8    harassment, and complained in April 2012 to her supervisor about the failure to accommodate

9    and disability discrimination.  See FAC ¶¶ 19, 27.  Since Rubadeau was terminated on April 11,

10   2012, see id. at ¶ 14, there is a short period of time between termination and making these

11   protected complaints.  This time frame is probative of a causal link.  However, an employer must

12   have knowledge of an employee's protected activity in order for the employer to retaliate for

13   engaging in protected activity.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982);

14   Morgan, 88 Cal.App.4th at 70.  The knowledge requirement for a causal link can be met by

15   showing: (1) the relevant decision maker actually knew about the employee's protected activity;

16   or (2) the relevant decision maker acted as the "cat's paw" of an individual who knew about the

17   protected activity, i.e. the decision maker was influenced into taking the adverse action by an

18   individual who knew about the protected activity.  See Gunther v. County of Washington, 623

19   F.2d 1303, 1316 (9th Cir. 1979); DeJung v. Superior Court, 169 Cal.App.4th 533, 552 (2008);

20   Reeves v. Safeway Stores, Inc., 121 Cal.App.4th 95, 107-10, 116 (2004); Morgan, 88

21   Cal.App.4th at 70-71, 74.  Here, there are no allegations that address the knowledge requirement.

22   The FAC is silent about the knowledge of, or influence over, the relevant decision maker(s).

23   Without knowledge by the employer, the short time frame does not plausibly show a causal link.

24          In sum, these causes of action suffer from many of the same problems as the previous

25   causes of action.  There are conclusory allegations that are little more than a laundry list without

26   factual support.  Although some protected activity and one adverse employment action have been

27   plausibly alleged, there is no plausible causal link.  Therefore, dismissal of these causes of action

28   with leave to amend is appropriate.

**4.**     **Failure to Accommodate – 11th cause of action**

*Defendant's Argument*

MAMCO argues that dismissal is appropriate because the FAC fails to allege key facts. First, the FAC does not allege facts that identify whether or how Rubadeau could perform the essential functions of her job. Second, the FAC fails to identify what specific accommodations were available so Rubadeau could perform her job.

*Plaintiff's Opposition*

Rubadeau argues that the FAC states a claim for failure to accommodate. The FAC alleges that Rubadeau was able to perform the essential job duties with reasonable accommodation, MAMCO was aware of her disability but refused to provide the reasonable accommodation, and she was harmed as a result.

*Legal Standard*

FEHA prohibits an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an … employee." Cal. Gov. Code § 12940(m). The essential elements of a claim of failure to accommodate claim are: (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is a qualified individual; and (3) the employer failed to reasonably accommodate the plaintiff's disability. Furtado v. State Personnel Bd., 212 Cal.App.4th 729, 744 (2013). A plaintiff is a "qualified individual" if she can perform the essential functions of the desired job either with or without accommodation. Cuiellette v. City of Los Angeles, 194 Cal.App.4th 757, 766 (2011). "Reasonable accommodation" means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Lui v. City & County of San Francisco, 211 Cal.App.4th 962, 971 (2012). "Reasonable accommodation" may include either of the following: (1) making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities; or (2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. Cal. Gov. Code § 12926(o);

1   Furtado, 212 Cal.App.4th at 745.  When a proposed accommodation would create an "undue

2   burden" on the employer, then the employer is not required to grant the proposed

3   accommodation.  See Cal. Gov. Code §§ 12926(s), 12940(m).

4          *Discussion*

5          The FAC alleges that Rubadeau "requested reasonable accommodation in the form of

6   finite medical leave in order to treat her disability."  FAC ¶ 25.  Finite medical leave may be a

7   "reasonable accommodation," but it must be likely that at the end of the leave, the employee will

8   be able to perform her duties.  See Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 263 (2000);

9   Hanson v. Lucky Stores, Inc., 74 Cal.App.4th  215, 226 (1999).  The FAC does not allege that it

10  was likely that Rubadeau would have been able to resume her job duties at the end of the finite

11  leave.  Without such an allegation, the accommodation identified is not reasonable.  For this

12  reason, dismissal with leave to amend is appropriate.

13  **5.     Failure to Engage in the Interactive Process – 12th cause of action**

14         *Defendant's Argument*

15         MAMCO argues that insufficient facts are pled.  The FAC does not allege that MAMCO

16  had a duty to engage in the interactive process.  The FAC does not identify with whom Rubadeau

17  spoke about her injury or request for accommodation, or the specific accommodation requested.

18         *Plaintiff's Opposition*

19         Rubadeau argues that she has pled a claim for failure to engage in the interactive process.

20  The FAC alleges that she requested reasonable accommodation, that she could perform her job

21  with reasonable accommodation, but MAMCO failed to participate in a timely and good faith

22  interactive process to determine whether a reasonable accommodation could be made.

23         *Legal Standard*

24         Under FEHA, it is an unlawful employment practice to "fail to engage in a timely, good

25  faith, interactive process with the employee or applicant to determine effective reasonable

26  accommodations, if any, in response to a request for reasonable accommodation by an employee

27  or applicant with a known physical or mental disability or known medical condition."  Cal. Gov.

28  Code § 12940(n).  "The 'interactive process' required by the FEHA is an informal process with

18

the employee or the employee's representative, to attempt to identify a reasonable

accommodation that will enable the employee to perform the job effectively.  Ritualized

discussions are not necessary."  Scotch v. Art Institute of Cal., 173 Cal.App.4th 986, 1013

(2009);  Wilson v. County of Orange, 169 Cal.App.4th 1185, 1195 (2009).  "Although it is the

employee's burden to initiate the process, no magic words are necessary, and the obligation

arises once the employer becomes aware of the need to consider an accommodation."  Scotch,

173 Cal.App.4th at 1013; Gelfo v. Lockheed Martin Corp., 140 Cal.App.4th 34, 62 n.22 (2006).

"Once the interactive process is initiated, the employer's obligation to engage in the process in

good faith is continuous."  Scotch, 173 Cal.App.4th at 1073.  Both parties must participate in

good faith in the interactive process, and both parties have the obligations to keep

communications open and to not obstruct the process.  Id.; Jensen, 85 Cal.App.4th at 266.  To

prevail under § 12940(n), "an employee must identify a reasonable accommodation that would

have been available at the time the interactive process should have occurred."  Scotch, 173

Cal.App.4th at 1018.  Where an employer actually provides an employee with a reasonable

accommodation, a claim for failure to engage in the interactive process is precluded.  Wilson,

169 Cal.App.4th at 1195.

### *Discussion*

As discussed above, the FAC alleges that Rubadeau requested a reasonable

accommodation of a finite leave of absence.  See FAC ¶ 25.  The FAC then alleges that

"[MAMCO] denied Rubadeau's request without further discussion and engaging in the

interactive process."  Id. at ¶ 26.  Paragraphs 25 and 26 are sufficient to show that Rubadeau

triggered the obligation to engage in the interactive process because she requested an

accommodation.

However, for liability to attach under § 12940(n), there must be a reasonable

accommodation that was available at the time the interactive process should have begun.  See

Scotch, 173 Cal.App.4th at 1018.  A plaintiff can show that a reasonable accommodation was

available by expressly identifying a specific accommodation.  Also, in situations where the

employee is unable to identify a specific and available reasonable accommodation while she is

still in the workplace, and the employer fails to engage in a good faith interactive process to help

identify one, then the employee may allege that a reasonable accommodation would have been

found had there been an interactive process.  See id. at 1018-19 (discussing Nadaf-Rahrov v.

Neiman Marcus Grp., Inc., 166 Cal.App.4th 952, 984 (2008)).  The employee may then rely on

the litigation process to identify such an accommodation.  See id.

In this case, the FAC has identified a specific accommodation that was requested by

Rubadeau to MAMCO, finite leave.  See FAC ¶ 25.  As discussed above, however, the allegation

does not show that the requested accommodation was reasonable because there is no allegation

that Rubadeau would likely be able to return to her duties when the leave ended.  See Jensen, 85

Cal.App.4th at 263; Hanson, 74 Cal.App.4th at 226.  Because the allegations relating to

reasonable accommodation are insufficient, dismissal of this claim with leave to amend is

appropriate.

**6.** **Failure to Prevent Discrimination, Harassment, & Retaliation – 13th cause of action**

*Defendant's Argument*

MAMCO argues that the FAC has not alleged that MAMCO owed Rubadeau a duty of

care, how there was a breach of the duty, or that there were resulting damages.  Also, because the

FAC does not allege valid causes of action for discrimination or harassment, there is no liability

for failing to prevent discrimination or harassment.

*Plaintiff's Opposition*

Rubadeau argues that the FAC adequately alleges a claim.  The FAC alleges that

Rubadeau suffered discrimination, harassment, and retaliation, and that MAMCO failed to take

reasonable steps to prevent discrimination or harassment, and that she suffered harm.

*Legal Standard*

Under FEHA, it is an unlawful employment practice for an employer to "fail to take all

reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov.

Code § 12940(k).  Retaliation is included within the meaning of "discrimination" for purposes of

§ 12940(k).  See Taylor v. City of Los Angeles Dept. of Water & Power, 144 Cal.App.4th 1216,

1240 (2006).  A § 19240(k) claim follows the usual elements of a tort:  a legal duty of care to the

1  plaintiff, breach of duty (i.e. a negligent act or omission), legal causation, and damages to the

2  plaintiff. Veronese v. Lucasfilm Ltd., 212 Cal.App.4th 1, 28 (2012); Trujillo v. North Cnty.

3  Transit Dist., 63 Cal.App.4th 280, 286 (1998). In determining whether reasonable steps of

4  prevention have been taken, relevant considerations include whether the employer: (1) promptly

5  investigates claims of discrimination; (2) has established and promulgated an anti-discrimination

6  policy; and (3) has implemented effective procedures to hand complaints and grievances

7  regarding discrimination. California Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.,

8  122 Cal.App.4th 1004, 1024-25 (2004). However, "courts have required a finding of actual

9  discrimination or harassment under FEHA before a plaintiff may prevail under § 12940(k)."

10  Carter v. California Dept. of Veterans Affairs, 38 Cal.4th 914, 925 n.4 (2006); Scotch, 173

11  Cal.App.4th at 1021; Trujillo, 64 Cal.App.4th at 289. That is, if the employee does not show that

12  she was actually discriminated against or harassed, there is no liability under § 12940(k). Kelley

13  v. The Conoco Cos., 196 Cal.App.4th 191, 208 (2011).

14       *Discussion*

15       The Court disagrees with MAMCO that the FAC has not alleged a duty owed to

16  Rubadeau. The duty to prevent discrimination and harassment is provided by § 12940(k), and

17  that duty is affirmative and mandatory. Northrop Grumman Corp. v. Workers' Comp. Appeals

18  Bd., 103 Cal.App.4th 1021, 1035 (2002). Further, the FAC adequately alleges that Rubadeau

19  suffered harm. Nevertheless, the Court agrees that no plausible cause of action is stated.

20       First, the Court has held that the FAC does not allege plausible claims of discrimination,

21  harassment, or retaliation. Without actionable discrimination, harassment, or retaliation, there

22  can be no viable § 12940(k) claim. Carter, 38 Cal.4th at 925 n.4; Kelley, 196 Cal.App.4th at

23  208; Scotch, 173 Cal.App.4th at 1021; Trujillo, 64 Cal.App.4th at 289.

24       Second, there are no allegations that describe how MAMCO breached the duty to take

25  reasonable steps to prevent discrimination or harassment. This cause of action is in the nature of

26  a negligence claim. See Veronese, 212 Cal.App.4th at 28; Trujillo, 63 Cal.App.4th at 286.

27  Simply because a harm has occurred does not mean that a defendant has acted unreasonably.

28  Allegations that explain how MAMCO breached the duty of care under § 12940(k), that is how

1   or in what way MAMCO failed to take reasonable steps to prevent discrimination, are necessary.

2   For these reasons, dismissal with leave to amend is appropriate.

3   **7.      Failure to Take Immediate Action to Stop Harassment – 14th cause of action**

4   *Defendant's Argument*

5   MAMCO argues that the FAC has not alleged that MAMCO owed Rubadeau a duty of

6   care, how there was a breach of the duty, or that there were resulting damages.  The FAC does

7   not allege that MAMCO was on notice of any purported unlawful conduct, nor are there

8   allegations that show vicarious liability.  Also, because the FAC does not allege valid causes of

9   action for discrimination or harassment, there is no liability for failing to prevent discrimination

10  or harassment.

11  *Plaintiff's Opposition*

12  Rubadeau argues that the FAC adequately alleges a claim.  The FAC alleges that

13  Rubadeau suffered discrimination, harassment, and retaliation, and that MAMCO failed to take

14  reasonable steps to prevent discrimination or harassment, and that she suffered harm.

15  *Legal Standard*

16  Under FEHA, an employer is liable for the harassing conduct of non-supervisory

17  employees if the employer (or its supervisors) knows or should have known of the harassing

18  conduct, but fails to take immediate and appropriate corrective action.  Cal. Gov. Code §

19  12940(j)(1); Salazar v. Diversified Paratransit, Inc., 117 Cal.App.4th 318, 324-25 (2004).  The

20  § 12940(j)(1) "knows or should have known" language creates a negligence standard.  State

21  Dept. of Health Services v. Superior Ct., 31 Cal.4th 1026, 1041 (2003).  An employer is not

22  liable for non-supervisor harassment if the employer takes "prompt, reasonable, and efficacious

23  remedial action."  Mathieu v. Norrel Corp., 115 Cal.App.4th 1174, 1185 (2004).

24  *Discussion*

25  The motion and the opposition group this cause of action together with the 13th cause of

26  action.  Both sides cite to § 12940(j), which is FEHA's harassment provision.  The FAC alleges

27  under this cause of action that "[MAMCO] knew of the aforementioned unlawful harassing,

28  [retaliation], and [discrimination], described hereinabove, and failed to take immediate and

appropriate corrective action, in violation of FEHA." FAC ¶ 202.  This allegation indicates that the 14th cause of action should be grouped with the 3rd and 4th causes of action for harassment. For FEHA harassment claims, the employer's knowledge is only relevant to liability when the harassing conduct is by non-employees.  This is because an employer is strictly liable for the harassing conduct of its supervisors, but is liable for the harassing conduct of non-supervisors only when it knew or should have known about the harassing conduct.  See Cal. Gov. Code § 12940(j)(1); Salazar, 117 Cal.App.4th at 324-25; Fiol, 50 Cal.App.4th at 1331.  Given the FAC's allegations of MAMCO's knowledge, and the parties' citation to § 12940(j), the Court will read the 14th cause of action as alleging employer liability for co-worker/non-supervisory harassment.

So reading the FAC, dismissal is appropriate.  Paragraph 19 alleges that Rubadeau complained to her immediate supervisor and upper management about gender harassment.  See FAC ¶ 19.  Therefore, the FAC adequately alleges that MAMCO knew about employee conduct and possible gender harassment.  However, the allegation that MAMCO failed to take immediate and appropriate corrective action is ambiguous.  If Rubadeau means to allege that MAMCO did absolutely nothing, then she should expressly allege that MAMCO did nothing.  Such an allegation of complete inactivity clearly constitutes a failure to take immediate corrective action. However, if Rubadeau means that MAMCO did act, but its actions were somehow inadequate, then she should allege how the conduct was insufficient.  Otherwise, an allegation that MAMCO failed to take immediate and appropriate corrective action is nothing more than a legal conclusion.  Additionally, for the same reasons that dismissal of the 3rd and 4th causes of action was appropriate, dismissal of this cause of action is appropriate.  The allegations do not establish a sufficiently hostile work environment.

For these reasons, dismissal with leave to amend is appropriate.

## 8.     Wrongful Termination in Violation of Public Policy – 15th cause of action

### Defendant's Argument

MAMCO argues that, as recognized by the California courts, Labor Code § 132a cannot form the basis for public policy wrongful termination claim.

1     In reply, MAMCO argues that Art. XIV, § 4 is the constitutional provision that gave the

2 California Legislature the authority to enact Labor Code § 132a.  It would be improper to rely on

3 Art. XIV, § 4 as creating a public policy when Labor Code § 132a cannot serve as a predicate

4 public policy.  Further, Art. XIV § 4 imposes no duties on an employer, and thus cannot serve as

5 predicate public policy.

6     *Plaintiff's Opposition*

7     Rubadeau argues that she wishes to file an amended complaint that substitutes California

8 Constitution Art. XIV § 4 as the public policy at issue, in the place of Labor Code § 132a.

9 Rubadeau states that Art. XIV § 4 creates a right for an employee to have access to a system of

10 worker's compensation.  Article XIV § 4 satisfies the relevant criteria for use in a public policy

11 wrongful termination claim.

12     *Legal Standard*

13     "The central assertion of a claim of wrongful termination in violation of public policy is

14 that the employer's motives for terminating the employee are so contrary to fundamental norms

15 that the termination inflicted an injury sounding in tort."  Roby v. McKesson Corp., 47 Cal.4th

16 686, 702 (2009).  "Tort claims for wrongful discharge typically arise when an employer retaliates

17 against an employee for:  (1) refusing to violate a statute, (2) performing a statutory obligation,

18 (3) exercising a statutory right or privilege, or (4) reporting an alleged violation of a statute of

19 public importance."  Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1256 (1994).  To support

20 such a cause of action, the policy in question must satisfy four requirements: (1) the policy must

21 be supported by either constitutional or statutory provisions; (2) the policy must be "public" in

22 the sense that it "inures to the benefit of the public" rather than serving merely the interests of the

23 individual; (3) the policy must have been articulated at the time of the discharge; and (4) the

24 policy must be "fundamental" and "substantial."  Stevenson v. Superior Court, 16 Cal.4th 880,

25 894 (1997).  Although the statutory or constitutional provision does not have to prohibit the

26 employer's precise act, the provision must sufficiently describe the type of prohibited conduct to

27 enable an employer to know the fundamental public policies that are expressed in that law and to

28 have adequate notice of the conduct that will subject the employer to tort liability to the

1  employees it discharges.  Ross v. Raging Wire Telecommunications, Inc., 42 Cal. 4th 920, 932

2  (2008).  "[W]hen the constitutional provision or statute articulating a public policy also includes

3  certain substantive limitations in scope or remedy, these limitations also circumscribe the

4  common law wrongful discharge cause of action."  City of Moorpark v. Superior Court, 18

5  Cal.4th 1143, 1159 (1998).

6       *Discussion*

7       Rubadeau has essentially abandoned Labor Code § 132a as the public policy source of her

8  wrongful termination claim.  In *Dutra v. Mercy Med. Ctr.*, 209 Cal.App.4th 750, 758 (2012), the

9  court of appeal held that a wrongful termination in violation of public policy claim could not be

10  based on Labor Code § 132a.  The court of appeal reasoned that to allow such a claim would

11  impermissibly give the plaintiff broader remedies and procedures than those provided by Labor

12  Code § 132a itself.  See id.  In light of *Dutra* and Rubadeau's non-opposition, this cause of

13  action will be dismissed.

14       The more significant issue is whether amendment should be permitted.  Rubadeau wishes

15  to amend the FAC to allege a public policy wrongful termination claim based on California

16  constitution Art. XIV § 4.[10]  Rubadeau's argument and request is not well developed.  It consists

17  

18       [10]California Constitution Article XIV Section 4 reads in its entirety:

19  The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving them from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government.

27  

28  The Legislature is vested with plenary powers, to provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination, and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated

1 of little more than a citation to the California constitution, an enumeration of *Stevenson*'s four

2 factors for assessing a policy source, and a conclusory statement that Art. XIV § 4 meets the four

3 factors.  Rubadeau has not shown that Art. XIV, § 4 can serve as the basis of her public policy

4 wrongful termination claim.

5     Article XIV § 4 is a grant of plenary power and a series of directives to the legislature for

6 the establishment of a worker's compensation system.  See Department of Rehab. v. Workers'

7 Comp. Appeals Bd., 30 Cal.4th 1281, 1288 (2003); Charles J. Vacanti, M.D., Inc. v. State Comp.

8 Ins. Fund, 24 Cal. 4th 800, 810 (2001).  Article XIV, § 4 reflects the policy that California should

9 have a comprehensive worker's compensation system with particular provisions/aspects.  By its

10 express terms, the focus of Art. XIV, § 4 is on the conduct of the legislature.  See Cal. Const.

11 Art. XIV, § 4.  The section enables the legislature to make provision for financial compensation,

12 medical treatment, and insurance coverage, as well as dispute resolution.  See id.  The legislature

13 has acted on this directive and met the policy goals of Art. XIV, § 4 through the passage of

14 various Labor Code sections.  Department of Rehab., 30 Cal.4th at 1288.  What is noticeably

15 absent from Art. XIV, § 4 are directives aimed at any individuals or institutions other than the

16 legislature.  Cf. Ross, 42 Cal.4th at 932.  In particular, there are no portions of Art. XIV, § 4 that

17 relate to retaliation or termination by employers against their injured employees.  The entire

18 focus of Art. XIV, § 4 is the legislature.

19     Given that the express language of Art. XIV, § 4 is a grant of power to the legislature,

20 Rubadeau has not shown that Art. XIV § 4 provides a basis for her claimed public policy.

21 Dismissal of this cause of action will be without leave to amend because Rubadeau has not met

22 _____

23 by it; provided, that all decisions of any such tribunal shall be subject to review by the appellate courts of this State.

24 The Legislature may combine in one statute all the provisions for a complete system of workers' compensation, as herein defined.

25 The Legislature shall have power to provide for the payment of an award to the state in the case of the death, arising

26 out of and in the course of the employment, of an employee without dependents, and such awards may be used for the payment of extra compensation for subsequent injuries beyond the liability of a single employer for awards to employees of the employer.

27 Nothing contained herein shall be taken or construed to impair or render ineffectual in any measure the creation and

28 existence of the industrial accident commission of this State or the State compensation insurance fund, the creation and existence of which, with all the functions vested in them, are hereby ratified and confirmed.

the first *Stevenson* factor.  <u>Ross</u>, 42 Cal.4th at 932-33; <u>Esberg Union Oil Co.</u>, 28 Cal. 4th 262, 272-73 (2002).

<b><u>CONCLUSION</u></b>

MAMCO moves to dismiss each of the FAC's fifteen causes of action.  MAMCO's motion has merit.  The FAC does not state plausible causes of action because each of the claims rely on unsupported conclusory allegations.  Although every fact that underlies a cause of action need not be alleged, there needs to be enough facts that indicate a plausible cause of action.  Because it is not clear that amendment would be futile, dismissal will be with leave to amend, except for the fifteenth cause of action which will be dismissed without leave to amend.

<b><u>ORDER</u></b>

Accordingly, IT IS HEREBY ORDERED that:

1.   Defendant's motion to dismiss is GRANTED;

2.   The first through fourteenth causes of action are DISMISSED with leave to amend, but the fifteenth cause of action is DISMISSED without leave to amend;

3.   Plaintiff may file an amended complaint, consistent with this order and with Rule 11, within twenty (20) days of service of this order;

4.   If Plaintiff does not file a timely amended complaint, leave to amend will be withdrawn and this case will be dismissed without further notice.

IT IS SO ORDERED.

Dated:   July 2, 2013                        _____
                                             SENIOR  DISTRICT  JUDGE